# Letson *v.* Hall.

## *Assumpsit.*

(Decided May 17, 1911.   55 South. 944.)

1. *Partnership; Action Against Surviving Partner; Burden of Proof.*—Where the action is in assumpsit on an alleged firm debt against the surviving partner, the burden is on the plaintiff to establish prima facie the partnership relation.

[Letson v. Hall.]

2. *Same; Existence; Evidence.*—Although each item or circumstance separately considered may have but slight weight, yet to prove a partnership it is admissible to show business intimacy and any other circumstances between persons with regard to particular enterprises, as well as their conduct relative thereto.

3. *Same.*—Where the issue is as to the existence of a partnership as to third persons that strict degree of proof is not required as when the question arises between alleged partners among themselves.

4. *Same; Continuance; Presumption.*—Facts tending to show a partnership at a certain date are admissible to show a partnership at a later date.

5. *Same; Evidence.*—The evidence in this case examined and held to establish the existence of a partnership at the time the notes were executed.

6. *Same; Estoppel.*—Where one by his acts or conduct authorizes a stranger to believe that he is a partner, as to such stranger he is a partner.

7. *Same; Firm Debts; Liability.*—The facts stated and examined and held to show that S. and the defendant were partners, and that defendant was estopped to deny liability as a partner on notes executed by S. for property used in the same business.

8. *Same; Authority of Partner; Execution of Notes.*—The partner of a firm engaged in the operation of a saw mill had authority to bind the firm by the execution of notes for the purchase price of property which went into the business.

9. *Same; Notes of; Exemptions; Effect.*—The presence of a clause waiving exemption in notes of a firm did not invalidate the notes, and in no way affected the authority of the partner to sign them in the firm name as simple promissory notes; a partnership is not entitled to exemptions whether waived or not.

10. *Same; Dissolution; Surviving Partner; Liability.*—Where the action was on certain notes executed by a firm, brought against the surviving partner, a plea which failed to deny that the notes were executed by the firm and that defendant was a member thereof, or so conducted himself as to be estopped from denying his liability on them is bad, although the plea denies plaintiff's ownership of the notes, and denies defendant's execution of them.

11. *Same; Conversion by Third Person; Suit as Surviving Partner.*—Where one is sued as surviving partner for the firm debt, evidenced by notes, and establishes his contention that he was a stranger to the firm, and had not by his acts or conduct preceding the dissolution of the firm by death estopped himself from denying liability on the note, the fact that after the death of the alleged partner he converted effects of the firm, did not warrant recovery against him in such action as for a conversion.

APPEAL from Bessemer City Court.

Heard before Hon. WILLIAM JACKSON.

[Letson v. Hall.]

Action by A. J. Letson against J. W. Hall, as surviving partner. Judgment for defendant and plaintiff appeals. Reversed and remanded.

ESTES, JONES & WELCH, for appellant. The court erred in overruling demurrers to the 2nd plea.—Sec. 3969, Code 1907; 4 Mayf. Dig. 386. The demurrers to the 4th plea as an answer to the 3rd count of the complaint should have been sustained.—Form 33, p. 1201, Code 1907. The notes and mortgages should have been admitted in evidence.—*Guscott v. Roden & Co.*, 112 Ala. 657. The court erred in granting the motion to exclude the evidence and in giving the affirmative charge for the defendant. Charge 1 should have been given.—22 A. & E. Enc. of Law, 179. Charge 3 should have been given.—*Sparks v. Wooten*, 35 Ala. 242; 22 A. & E. Enc. of Law, 187. Charge 4 should have been given.—22 A. & E. Enc. of Law, 159. Counsel discuss other assignments of error, but without further citation of authority.

PINKNEY SCOTT, for appellee. It was within the discretion of the court to permit the defendant to withdraw his demurrers and file pleas to the 1st count.—*Steele v. Tutwiler*, 57 Ala. 113. Plea 1 was sufficient. —Sec. 3969, Code 1907. The 2nd count filed by way of amendment is in trover and does not allege that it was one and the same transaction as that described in the 1st count.—Section 5329, Code 1907. Common reputation cannot establish the fact of partnership.— *Kinard v. Hill*, 102 Ala. 574. The burden was on the plaintiff.—*Finney v. E. C. I. Wks.*, 109 Ala. 485. The waiver of exemptions is good only as against the person executing it.—*Lippman v. First Nat. Bank*, 120 Ala. 127

DE GRAFFENRIED, J.—1.   The burden of proving a partnership rests on the plaintiff, who sues the defendants as partners, but he is only required to make out a prima facie case.   If the plaintiff, in such case, offers sufficient proof to make out, prima facie, the existence of the partnership, the burden is then shifted to the defendants to prove that they were not in fact partners.—*Clark v. Jones,* 87 Ala. 474, 6 South. 362.

The existence of a partnership may be shown by oral evidence.   It may be shown, just as the existence of any other questioned fact may be shown, by circumstantial evidence.   In *McGrew v. Walker,* 17 Ala. 824, the Supreme Court say that the intimacy of the defendants with each other may be shown, along with other evidence, as tending to establish a partnership.   The business intimacy between persons and their conduct with regard to a particular enterprise may be admissible as tending to prove a partnership between them, although each item of such evidence may have but slight weight, when separately considered.—30 Cyc. 404.   In the case of *Haug v. Haug,* 90 Ill. App. 604, the court held that, where the firm stye was "A. Haug & Son," and there was evidence that both father and son gave personal attention to the business, there was a strong presumption of the existence of a partnership.   In the case of *McDonald v. Gilbert,* 16 Can. Sup. Ct. 700, the court held that, where plaintiff had received letters written by one of the alleged partners on paper, on which the names of both were printed as constituting the firm, a prima facie case of partnership was made out.   While we think that, in the latter case, the court went too far in holding that the letter heads on which the letters were written made out a prima facie case of a partnership between the parties, we do think that such letter heads would be a matter of material consideration,

along with other evidence, tending to show a partnership.—See, further, 30 Cyc. 402, 403.

When the question vel non of a partnership arises between partners and third persons, the law does not require so strict a degree of proof as is required when the question arises in a case in which one alleges the existence of a partnership between himself and others. Evidence that one permitted himself to be held out as a partner by another is evidence tending to establish a partnership; and as to third persons one who, by his acts or conduct, authorizes a stranger to believe that he is a partner is, as to such stranger, a partner.—4 Mayfield's Dig. p. 387, § 75.

Proof of facts tending to show a partnership at a certain date is admissible to show a partnership at a later date, as a partnership once shown to exist will be presumed to have continued, until something to the contrary appears.—*Jones et al. v. Sims & Scot,* 6 Port. 138; 22 Am. & Eng. Ency. Law (2d Ed.) p. 49.

2.   This suit was brought by the plaintiff against the defendant as surviving partner of Sanders & Hall, which the complaint alleges was a partnership composed of the defendant and one D. M. Sanders, on several promissory notes, dated November, 1904, which were executed by the partnership, and, by successive assignments for value, became the property of the plaintiff. The complaint further alleges the death of D. M. Sanders, and that defendant is the surviving member of said partnership.

Applying the principles of law   above   announced to the evidence in the case, it is manifest that a partnership, not only as to strangers, but inter sese, is shown to have existed between the defendant and D. M. San-

ders from September, 1904, until the death of Sanders, which occurred some time after the execution of the notes sued on.

The plaintiff, Letson, testifies that in September, 1904, he sold Sanders & Hall a sawmill on Shade's creek, known as Letson's Mill, and that when he sold them the mill they both told him that they were partners, and he further testifies that, of his own knowledge, they were partners, and that the partnership was engaged in the sawmill business from the time he sold them the mill until Sanders died; that Sanders was a son-in-law of Hall, and that both of them looked after the sawmill; that when he sold them the mill the contract was reduced to writing (a copy of it was introduced), and in this contract it is stated that "Hall & Sanders" agree to saw .all timber, placed at the mill by plaintiff at the uniform rate of $2 per 1,000; that shortly after Hall and Sanders bought his mill it was burned, and they then bought another mill, for the purchase money of which the notes sued on in this suit were given, and installed that mill on the site of the mill which they had bought from plaintiff, attaching it to the parts of the old mill that were left serviceable after the fire, and continued the sawmill business; that after the death of Sanders defendant assumed control of the property and business, took in with him a man by the name of Harris, and continued it under the name of Hall & Harris; that after the death of Sanders plaintiff saw defendant about the notes sued on, that he did not, at first, dispute his liability thereon, but tried to settle them for a small amount, and did not deny his liability until shortly before the bringing of the suit.

One Edwards testified that after the death of Sanders the sawmill business was changed from the name of Sanders & Hall to that of Hall & Harris, and that

Hall & Harris continued the business in the same way as it had previously been conducted; that the new firm used the sawmill, teams, and outfit of the old firm; that he dealt with the new firm just as he had done with the old firm; that defendant, after the death of Sanders, paid him the balance due on an account of Sanders & Hall.

E. G. Betts testified that he sold to Sanders the sawmill outfit which is above referred to, and that he did not know Hall in the transaction until the papers were signed, when Sanders told him that Hall was helping him out, and signed Sanders & Hall, at which time Sanders told the witness that Hall was interested in the business. The evidence further showed that from September, 1904, up to Sanders' death, the bill heads and dray tickets of the business were in the name of Sanders & Hall, and that their checks were made in that way. After Sanders' death, the defendant, as above stated, took possession of the milling business, and certainly a part of the property so taken possession of by him was the property for which the notes sued on in this case were given, and with that mill Hall continued the business under the name of Hall & Harris.

The evidence further showed that the notes sued on were, by proper and legal assignment, the property of the plaintiff; that they were secured by a mortgage on the property for the purchase money of which they were given; that the mortgage was recorded in Jefferson county, where the property was situated, on or about the date of its execution; and that the mortgage was the property of the plaintiff.

The fact that the notes contained clauses waiving exemptions as to personalty did not affect their legality. Sanders signed the name of Sanders & Hall to the notes, and then signed his own name to them. He did

40—CA

not sign the name of the defendant to them. As a partnership is entitled to no exemptions, the presence of the clauses waiving exemptions in the notes had no field of operation as to it, and in no way affected Sanders' authority to sign and make them binding, as simple promissory notes, on the firm. The legal effect of the notes, when delivered, was the same as to the partnership, and to Hall, as a member thereof, as if no clause waiving exemptions had been placed in them.

If there was a partnership, and the above evidence not satisfactorily rebutted by other legal evidence, showed a partnership, there can be no question about Sanders' authority to bind the firm by the execution of the notes. They were given for the purchase money of property which went into the business of the firm, and was used by it in carrying on that business. Having the authority, as a member of the firm, to buy the property and contract the debt, he necessarily possessed the power, in the name of the firm, to execute the notes, which were evidences of the debt and of the time fixed for payment. The execution of the notes and mortgage by Sanders in the name of Sanders & Hall was duly proven. The notes were therefore admissible in evidence. The court erred in excluding the plaintiff's evidence, and also erred in refusing to admit the notes sued on in evidence.

3. We have thus far considered this case, as presented by the evidence, on the question vel non of a partnership, and the liability of the defendant in this suit, if there was in fact a partnership. Under the evidence as presented by the bill of exceptions, the question also arises as to whether the defendant is not liable to the plaintiff, under the doctrine of estoppel, even if the defendant, on the next trial of this case, should, by evidence, successfully show that there was in fact no part-

nership. It is to this phase of the case that this opinion now addresses itself.

The evidence quoted above tends to show that Sanders held himself out to the public as defendant's partner; that he was his son-in-law; that he contracted debts in the name of Sanders & Hall in Bessemer, one at least of which was paid by defendant after Sanders' death; that the bill heads and dray tickets of the business were in the name of Sanders & Hall; and that the checks on banks were in the name of Sanders & Hall, which necessarily means that there was somewhere one bank at least in which money was deposited in the name of Sanders & Hall. While the evidence does not disclose whether they lived in the same house, it is inferable from the evidence that they certainly lived in the same neighborhood. It appears, therefore, from the evidence that it was a matter, at least of neighborhood notoriety, that, while Sanders was in the sawmill business, from September, 1904, until his death, he was running the business under the name of Sanders & Hall, and was holding the defendant out as his partner in such business. This being true, the defendant in all probability knew it. As the evidence tends to establish the fact that Sanders held himself out as defendant's partner, the common report of that fact in the neighborhood tends to show that the defendant knew the fact. This rule is based upon the probability that a particular individual knows what the balance of the community seems to know.—*Humes v. O'Bryan,* 74 Ala. 64.

It further appears from the evidence that defendant, after Sanders' death, possessed himself of all the property of which Sanders had control under the name of "Sanders & Hall," and, forming a partnership with one Harris, continued the business, just as it had been formerly conducted, under the name of Hall & Harris; that

plaintiff informed him of his notes against Sanders & Hall; that there was a mortgage on the property, and, while the court refused to admit the mortgage, it is shown in the bill of exceptions, its execution was duly proven, and it was of record in the probate office of the county of Jefferson long before Sanders' death.

If the above is true, the defendant is estopped from denying his liability on the notes. He will not be permitted by the law to reap the benefits of Sanders' purchase of the property, and keep property upon which plaintiff had a valid mortgage, and for the purchase money of which, or a part of which, the notes were given, and at the same time deny Sanders' authority to bind him on the notes. Courts are the instruments of the law in enforcing the principles of justice between man and man, and no court will permit a party to knowingly reap the fruits of a transaction entered into for him by another, although unauthorized, and deny that he was bound thereby. The doctrine of estoppel in cases like the present, simply means that one shall not take the fruits of an illegal transaction and afterwards set aside the transaction as illegal. A man cannot accept the benefits and reject the burdens of a transaction. He cannot blow hot and cold at the same time.—3 Mayfield's Dig. p. 410, §§ 7, 8, and authorities cited. As a circumstance tending to establish an estoppel, the mortgage securing the notes should have been admitted in evidence.

4. Plea 2 was good, as a plea denying the existence of the partnership. It was sufficient to cast upon the plaintiff the burden of showing by evidence, prima facie, the existence of a partnership between Sanders and Hall, either inter sese or as to a third person. If Hall was estopped from denying the existence of the partner-

ship, the plaintiff can set those facts up in a special replication to the plea.

5. The fourth plea was bad. It is dual, in that it undertakes to deny the plaintiff's ownership of the notes, and also that defendant executed the notes; and while duplicity in pleading, except in pleas in abatement, is allowed in Alabama, this plea denies that the defendant executed the notes, but does not deny that they were executed by the partnership of Sanders & Hall. If executed by Sanders & Hall, and the defendant was a member of the firm, or so connected himself as to estop himself from denying his liability on them, then they are binding on him.

6. It is not necessary for us to consider the ruling of the court is sustaining the demurrer to the count in trover. As we understand the plaintiff's argument, he proposed, under this count, to offer evidence tending to show that, after the death of Sanders, the defendant converted to his own use certain property which belonged to Sanders & Hall. As we have already stated, if the defendant was a member of the firm of Sanders & Hall, he is liable to the plaintiff on the notes. If he was not a member of the firm and has estopped himself from defending against them, he is also liable on the notes, and if, after the death of Sanders, defendant possessed himself of the effects of Sanders & Hall and used them in his business, either individually or in connection with one Harris, under the name of Hall & Harris, this can all be shown by evidence on the questions of partnership vel non, or estoppel vel non.

But if the defendant was a mere stranger to Sanders & Hall, and is not, by his acts and conduct preceding and succeeding the death of Hall, estopped from denying his liability on the notes, then, if he converted effects of Sanders & Hall, after the death of Sanders, to his own

use, this would not render him liable in trover in this action, which is against him as surviving partner of Sanders & Hall, and not simply as an individual.

The plaintiff asked, in writing, a number of charges in his behalf, but, as the court excluded the evidence of plaintiff and refused to admit the plaintiff's notes and mortgage, we cannot consider them.

We do not think that it is necessary to discuss any of the other questions presented by the record.

Reversed and remanded.